80  485
s183 505

## Elisha C. Ware v. Edward H. Salsbury.

1. EQUITY PRACTICE—*Effect of Sworn Answers.*—So far as a sworn answer, when called for, is responsive to the allegations of the bill, it must be taken as true, unless it is overcome by evidence equivalent to the testimony of two witnesses.

Bill of Discovery, etc.—Trial in the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Hearing and decree for complainants on master's report; appeal by defendant. Heard in this court at the October term, 1898. Reversed and remanded with directions. Opinion filed March 16, 1899.

Appellee filed his bill in April, 1895, charging, in substance, that appellant, a real estate agent in Chicago, was employed by him, appellee, as his agent, in September, 1890, to purchase for appellee certain lands in Jasper county, Indiana; that appellant did, in pursuance of such agency, purchase one tract of land of 720 acres from one Ingraham, at the price, as appellee then supposed and was informed by appellant, of · $12 per acre, and another tract of 480 acres from one Wood, at the price, as appellee then supposed and was informed by appellant, of $8 per acre; that appellee paid to appellant said prices, respectively, for said tracts, upon the representation by appellant that the lands cost said amounts per acre, and received through him conveyances therefor from said Ingraham and Wood, under the belief that his said agent in fact paid to said Ingraham and Wood the amounts so paid by appellee; that a short time prior to the filing of the bill, he, for the first time, ascertained that he had been deceived by appellant in regard to the price paid by appellant for said lands, and that appellant in fact paid to said Ingraham only $5,040, instead of $8,640, as represented by appellant, and to one Thompson, but not to Wood, as appellee supposed, only $1,600, instead of $3,840, as appellee supposed; that Wood took the title from Thompson and conveyed it to appellee as an accommodation to appellant, and to prevent appellee from knowing what was in fact paid by appellant for the lands.

The bill asks for discovery and an accounting, but waives answer under oath.

After a demurrer was interposed and sustained, appellee amended his bill, making further allegations as to the details of his dealings with appellant, but not changing materially the scope of the bill, and amended the original bill by striking out the waiver of answer under oath, and prayed that the bill, as amended, be answered under oath.

A special demurrer was interposed and confessed, the bill was again amended, a third demurrer was filed and the bill for the third time amended, leaving it, as finally amended, calling for appellant's answer under oath. Appellant answered under oath, denying that he ever, at any time, acted as agent of appellee in the purchase of the lands mentioned in the bill, that he made any of the fraudulent representations set up in the bill, and admits that he purchased the property for the prices alleged in the bill from Ingraham and Thompson, but denies that the purchases were made for appellee; alleges that he made such purchases on his own account, and alleges that he sold the lands to appellee, those from Ingraham at $12, and those from Thompson at $8 per acre, and received from appellee for such lands the amounts alleged by the bill; alleges that after he submitted to appellee the lands for sale, and before their purchase by him, appellee went on two occasions and examined the lands, one time taking his wife with him, but without appellant's knowledge at the time; that appellee made the said purchases after full investigation and knowledge of the lands, and as to the value; that the lands were well worth the prices paid by appellee; that appellee suffered no loss or damage, but resold the lands with large profit long before the bill was filed; that appellee never offered to pay and never paid appellant for his alleged services as agent, and that he, appellant, never presented any bill to appellee for services.

Replication to the answer having been filed, the cause was referred to a master, who took the evidence and reported to the court, sustaining appellant's claims in sub-

stance, and while he does not find that Ware acted as agent for appellee, he reports, among other things, viz. :

" Ware swears that he had a prior option for the purchase of this property, and that he sold to Salsbury, and that as to both deals he was not acting for Salsbury at all, but for himself.

He never informed Salsbury that he owned or had any interest in those tracts, and Salsbury was undoubtedly led to believe that he was purchasing directly from Wood and Ingraham through Ware.

Ware and Salsbury contradict each other in a great many particulars, but the testimony of Ingraham and Sigler, and other circumstances, tend to discredit Ware. The master is of the opinion that Ware merely obtained net prices from the owners, and when he found that he could sell at a profit, he determined to do so, and to keep the sellers and Salsbury in the dark as to the price paid and received. It is immaterial whether Ware acquired his interest before or after his sale to Salsbury, or whether he had any contracts with the owners or not. Salsbury was led to believe that Ware was acting for him, and the result would be the same if Ware owned them all the time and concealed that fact from Salsbury and induced him to believe that some one else owned the land, and thus obtained from him a larger price than he could have obtained had the facts been known. No commission was paid or agreed to be paid to Ware or to any one in connection with these deals.

Salsbury never learned of the facts until a short time prior to the filing of the bill herein.

Prior to purchasing these tracts Salsbury and his wife went alone to look at the land. It does not appear whether Salsbury inquired of any one else as to the value of these lands. Ware told Salsbury that he could make a good profit, and it appears that he did realize a good profit on a sale of the lands.

Much stress is laid by defendant's solicitor on the fact that no commission was agreed to be paid, and none was paid, and the claim is insisted on that no relation of agency or of trust existed between Salsbury and Ware, that no misrepresentations as to value were made, and that Ware's predictions as to profits were realized. It does seem strange, at first, that nothing was said about commissions, but this is not unusual. Ware evidently was satisfied with his profit, and Salsbury was content if the commissions were not asked for. Salsbury got what he bargained for, and made the

profit which he expected, and in one sense was not damaged, but it can not be doubted that had he known the true state of affairs, he would not have paid more for this land than the owners were asking.

Ware led him to believe that he (Ware) was not interested, and that the lands were worth the price paid when they could have been had for less. Had Salsbury known that he was buying of Ware, he would have made inquiry elsewhere as to what lands could be bought for in that vicinity. Salsbury trusted Ware, and Ware had no right to take advantage of it. This case comes within the rule that one occupying a trust relation can not take advantage of it and make a profit."

This report was confirmed by the chancellor, on the hearing of exceptions thereto, the findings of the decree following, in substance, the master's findings and conclusions. The chancellor also found that appellant, in July or August, 1890, told appellee that he, appellant, could get appellee a tract of one and three-fourths sections of land in Jasper county, Indiana, at $10 per acre, and also "that Salsbury was dealing with Ware, if not as his agent, yet in such a way that a trust relationship existed between them, and Ware had no right to take advantage of that relationship; that Ware occupied a position where trust and confidence were placed in him, and he could not take advantage of that trust and confidence to make a profit for himself which properly belonged to another. That Ware had a manager on his own tract named C. C. Sigler, and Ware had an understanding with him that if he could procure some low prices on tracts in that vicinity and assist Ware in showing lands and making sales, that he, Ware, would furnish any funds needed and share any profits which could be made out of the deals with Sigler.

The court further finds that Ware paid Sigler $2,840 as his share of the profits in these transactions, and to A. Thompson & Brother the sum of $25 for an opinion of title, which sums should be deducted from the entire amount received by Ware," and decreed that appellant pay to appellee the moneys he had received from appellee in excess of the amounts paid by appellant to Ingraham and Thompson,

after deducting $2,865 paid to Sigler, and for the opinion of title.    From this decree the appeal is taken.

Appellee has assigned a cross-error, to the effect that the court erred in allowing appellant $2,865, paid to Sigler.

WALTER M. HOWLAND, attorney for appellant.

HARRY L. IRWIN, attorney for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

The only question presented which we deem it necessary to consider, is whether the evidence is sufficient to support the findings of the chancellor, when it is considered that the bill called for an answer under oath, that the cause was heard upon bill, the sworn answer of defendant, replication thereto, master's report and exceptions thereto, together with the evidence taken by the master.

In so far as a sworn answer, when called for, is responsive to the allegations of the bill, it must be taken as true, unless it is overcome by evidence equivalent to the testimony of two witnesses.    Stauffer v. Machen, 16 Ill. 553; Marple v. Scott, 41 Ill. 60; Walton v. Walton, 70 Ill. 144.

In so far as there was any relation of agency or of trust and confidence alleged in the bill to have existed between appellee and appellant, it is squarely and unequivocally denied by the answer.    The only evidence which, in our opinion, supports the allegations of the bill in this respect, is that of appellee, and this, under the rule announced, is not sufficient to overcome the sworn answer of appellant.

Appellee contends that appellant had made arrangements for appellee to take these two tracts of lands before he in any way obligated himself to either said Thompson or Ingraham to buy from them, and even on his own testimony, only had a verbal price on the lands from the owners; that appellant did not at any time represent to appellee that he was the owner of the lands; that appellant paid money received from appellee in the purchase of the lands, and

that these circumstances are conclusive of the correctness of the learned chancellor's disposition of the case. We can not assent to this contention. Neither of these matters, even if conceded to be clearly established, would be inconsistent with appellant's claim that he did not act as agent for appellee, nor sustain to him any relation of trust or confidence.

We are inclined to the view, from a consideration of the evidence, that appellant's conduct was such as to leave the impression with appellee that he was purchasing the lands from Ingraham and Wood, instead of from appellant, but think that fact and the further fact, which also appears from the evidence, that Wood took the title for appellant as a matter of accommodation, though a deception and fraudulent in its nature toward appellee, are not conclusive in appellee's favor, and can not avail him in this case. They are consistent with an agency or act of friendship on the part of appellant toward Wood and Ingraham, and in the light of appellant's evidence that he had a verbal contract for the purchase of the lands from Ingraham and Thompson, and that he paid Wood $20 to execute two notes of $550 each, secured upon the land, and assumed to be paid by appellee, that appellant was in fact making the sale on his own account to appellee, and took this method to avoid making one set of conveyances.

Appellant did not in words represent that he was the owner of the lands sold, and appellee's evidence as to their dealings would tend to show that appellant was acting as agent of the owners rather than as agent for appellee. In any event there is a failure to show by any evidence clear and conclusive in its nature, either agency or a relation of trust and confidence between them.

Appellee quotes the following from appellant's evidence, viz.: "I told Mr. Salsbury I was operating in cheap lands in Indiana, and that I knew of land down there that he could buy for $10 an acre. That we were improving the country, and that in my opinion he could sell this land for $18 an acre within a year. I showed him a plat of land in

my office, and told him that Nelson Morris ultimately would buy it; that I felt very sure he could sell it to him, as I owned a piece there of 2,600 acres of my own, and that I could sell him land at a less figure than Mr. Morris had already offered me for mine, and that when we got these ditches completed, the land he bought would be worth as much as mine at that time—the land that I had already bought," and claims that it and certain statements and receipts in the handwriting of appellant, purporting to be statements of settlement with Ingraham and the Wood purchase, and the receipts showing that he received of Wood and Salsbury a check and contract relating to the Wood purchase, to be held in escrow for thirty days, and also the receipt of $500 from Salsbury to apply on account of the purchase, and a deed from Wood to Salsbury of the land, to be delivered on the further payment of the balance in cash and notes to make up the full purchase price of $3,840, show the agency alleged as well as the relation of trust and confidence between appellee and appellant.

We think the claim is not tenable.    These statements and receipts appear to have been made out by appellant in the presence of appellee, and there is no evidence called to our attention or which we have been able to discover in the record tending to explain them in a way inconsistent with appellant's answer and evidence. The receipts of themselves would tend to show that appellant was a mere stakeholder, representing both parties. The statements might be said to indicate an agency, or merely memoranda to show the items of a transaction between appellee and Ingraham and Wood, the two latter being represented by appellant as their agent. Taken together, we think they are important only as tending to show deceit on the part of appellant, but by no means what is contended by appellee.

The evidence quoted is only the expression of an opinion by appellant as to present and future prices and a purchaser for land he might buy, in connection with a statement as to what was being done in the locality in question to make the land valuable, and what appellant claimed he could

sell land to appellee for. We are unable to perceive how this evidence in any way tends to establish appellee's contention, and especially so when it is read in connection with the other evidence given by appellant.

Appellant's opinion is shown by the evidence to have been a good one, as appellee in sixteen months sold his land at an advance of $10,000, at a profit of at least $6,000, on a purchase of $12,000, and he sold appellee land at less than $10.50 per acre, a price satisfactory to him, and he was in no way damnified.

No commission or compensation for appellant's services was asked by him, nor was it inquired about by appellee, which of itself was sufficient to put him upon inquiry as to what was appellant's interest in bringing about the transaction. Had appellant sought to recover commissions in a suit at law, upon the evidence in this record, we are inclined to the view that it is insufficient to sustain a judgment in his favor, whereas, in this case, appellee's proof, to justify a recovery, should be much stronger than at law, where his evidence need only equal that of appellant in order to prevail.

It is unnecessary to consider the other questions argued and the cross-error assigned by appellee.

The decree is reversed and the cause remanded, with directions to dismiss appellee's bill for want of equity.

Reversed and remanded with directions.